## The Directors of the Poor and of the House of Employment of the County of Chester *versus* Worthington.

*Relief of Pauper in case of Emergency.—Liability of Directors of the Poor.*

1. Relief may be extended to one entitled to the benefit of the poor laws, without an order, in cases of emergency; and the overseers or directors are liable to pay for necessary relief furnished by others, provided an order of approval be obtained afterwards.

2. Where relief was properly furnished, in a case of emergency, a subsequent order of approval, obtained more than two years afterwards, was held not to have been obtained too late.

ERROR to the Common Pleas of *Chester county.*

[Directors of the Poor *v.* Worthington.]

This was an action by Wilmer Worthington, against the Directors of the Poor and of the House of Employment of the County of Chester, in which, after a trial and verdict, and the filing of reasons for a new trial, the following case was stated for the opinion of the court:

Humphrey Broomhall, on the 27th day of October 1856, received a severe injury upon the Pennsylvania Railroad near Oakland Station, in Chester county. His arm was broken, and he was otherwise seriously injured, so as to require prompt medical attendance. Several physicians were immediately called, among whom was the plaintiff. Upon consultation, it was concluded that he could not be moved to the county poor-house, with any hope of preserving his life, but that possibly he might be removed by railroad to West Chester, his place of residence. Accordingly he was put upon a bed, placed in a car, and carried to that place and left in his brother's house, on the 29th of October 1856. On the 30th of October 1856, his arm was amputated and wounds dressed by the plaintiff, who continued to attend him until the 9th of February 1857, when he was removed to his father's house in Delaware county, a distance of about eight miles, by putting him in a bed, in a light wagon, and walking the horses carefully all the way. Up to this period he was unfit to be moved to the poor-house. He recovered, and some time prior to April 1859, he returned to West Chester. He was poor at the time of the accident and during his illness, and was a proper subject for relief, under the poor laws of Pennsylvania. On the 18th day of April 1859, the plaintiff procured an order of maintenance and relief from Henry Fleming, a justice of the peace of said county, declaring said Broomhall a pauper. The plaintiff's bill, as physician, amounted to $120. The distance from Oakland to the Chester County Poor-House is from eight to ten miles. The distance from West Chester to the poor-house is about six miles. Marshall B. Hickman, one of the Directors of the Poor in 1856 and 1857, lived about two miles from West Chester. His residence was well known to the plaintiff, and he was in the habit of receiving his letters and papers at the post office in West Chester. He, or some of his family, visited the post office three or four times every week.

If the court should be of opinion that, under these circumstances, the plaintiff is entitled to recover, then judgment to be entered in his favour for $120; otherwise, judgment to be entered for defendants.

The court entered judgment for the plaintiff. Whereupon the defendants sued out this writ, and assigned the entering of said judgment for error here.

*William Darlington,* for plaintiffs in error.—The effort here

2 Wr.—11

made is to charge the Directors of the Poor with the expense of medical attendance upon a person who was not declared a pauper until more than two years after the attendance had ceased, for which there is no legal warrant. The discretion of these officers is not arbitrary, but under the control of the law. Where the case is one of emergency, the order for relief must follow at the earliest convenient moment: Directors *v*. Murray, 8 Casey 178. Neither Roxbury *v*. Bunn, 12 S. & R. 292; South Huntingdon *v*. East Huntingdon, 7 Watts 527; Directors, &c., *v*. Wallace, 8 W. & S. 94, nor Bradford *v*. Keating, 3 Casey 275, warrant this. The order reciting that Broomhall was *then* a pauper, did not render the directors liable for expenses incurred two years before it was made out.

*William B. Waddell* and *Joseph Hemphill*, for defendant in error.—This question depends on a proper construction of the 6th section of the Act of June 13th 1836, which prohibits the directors of the poor from relieving paupers without an order, and inflicts a penalty on them for doing so, unless such relief shall be approved of by two magistrates. In cases of emergency, relief may precede the order. See the cases in 12 S. & R. 296; 9 Barr 46; 8 W. & S. 94, and 3 Casey 277. The time of furnishing the order is immaterial, provided it precede the application for a credit for the expense incurred. The other party was not prejudiced by the delay in collecting the money. The case cited by plaintiffs in error from 8 Casey 178, requires an order " as soon as convenient, if the patient *survives*," and therefore an order after a recovery, by which the fact of his surviving is shown, is in time.

The opinion of the court was delivered, February 4th 1861, by STRONG, J.—The spirit of the poor laws is to cast upon the public the duty of providing for the relief of all helpless poor. This duty is to be performed through the agency of officers selected for the purpose, who are to procure for the proper subjects for relief, sustenance, clothing, medical attendance if necessary, and burial, at the expense of the public. But the legislature, while imposing this obligation upon the different districts in the Commonwealth, have also taken care that the community shall not be defrauded by their official agents, in the extension of relief to those who are not proper objects for public bounty. They therefore enacted, in the 9th section of the Act of 1771, and repeated the enactment in 1836, that no person shall be entered on the poor book of any district, or receive relief from any overseers, before such person, or some one in his behalf, shall have procured an order from two magistrates of the county for the same; and in case any overseer shall enter in the proper

[Directors of the Poor *v.* Worthington.]

book, or relieve such poor person without an order, he shall forfeit a sum equal to the amount or value given, "*unless such entry or relief shall be approved by two magistrates as aforesaid.*" This provision is not to be understood to diminish the general obligation to provide for the poor. Its purpose was to protect the community against misappropriation of their funds. The exception which it contains from the prohibition against furnishing relief to any except those who have obtained orders from magistrates, shows that the legislature did not design that the right to relief and the obligation to furnish should in all cases depend upon the previous "issue of an order." The legal duty to extend relief, from which the law raises a promise, does not spring out of the order, but out of the necessity of the pauper. Doubtless the law contemplates that in ordinary cases an order must be obtained before there is any title to relief, as evidence of such title. But it has repeatedly been ruled, both under the Act of 1771, and that of 1836, that a previous order is not indispensable. It was so held in Overseers *v.* Bunn, 12 S. & R. 292; Overseers of South Huntingdon *v.* Overseers of East Huntingdon, 7 Watts 527; Directors *v.* Wallace, 8 W. & S. 94; Directors *v.* Murray, 8 Casey 178. In cases of emergency, relief may be extended without an order, and must be so extended, and if necessary relief be furnished by others than the overseers or directors, they are under obligation to pay, provided an order of approval be obtained afterwards.

We do not understand this to be denied by the plaintiffs in error. They admit that this was a case of emergency, but they contend that they are not liable for the relief furnished, because the subsequent order was not obtained until more than two years after the emergency arose. Unquestionably it is proper in such cases that the order should be obtained without unnecessary delay, but we are not prepared to say that if it be not, the liability of the public ceases. The legislature have fixed no time within which an order of subsequent approval must be obtained to entitle an overseer to a credit in his accounts; and it is not for us to prescribe limits to the delay. The community is protected by our holding that there is no liability to furnish relief without an order, except in cases of emergency, and that whether there was an emergency or not is to be determined by the magistrates (or magistrate in Chester county), when application is afterwards made to them for an order. If the magistrate errs, the Act of Assembly provides a remedy, by giving an appeal from his decision to the Court of Quarter Sessions of the proper county.

It follows from what we have said, that there was no error in entering judgment for the plaintiff below.

The judgment is affirmed.