## Directors of the Poor of Chester County *versus* Malany.

1. In controversies between different districts (for the poor) either as to order for removal or for expenses incurred where such order could not be procured in time, the Quarter Sessions have sole and exclusive jurisdiction.

2. This rule does not apply to cases of expenses incurred by an individual.

3. Directors of the poor made a rule that outdoor relief should not be paid for in case of emergency unless they should be notified within three weeks after the emergency occurred. *Held*, that this rule did not apply when it was not known to those furnishing aid, that the person was a pauper.

January 21st 1870. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county* : No. 279, to January Term 1870.

This was an action of assumpsit, commenced November 21st 1868, by William S. Malany against the Directors of the Poor of Chester county, for services as physician rendered to Albert M. Smith, a pauper. The case was tried November 8th 1869, before Butler, P. J.

The evidence was, that on a night in December 1867, Smith, who was a single man, was badly frozen about three miles from West Chester, the residence of the plaintiff, and about nine miles from the poor-house of the county. He was in so dangerous a condition that it would have been unsafe to take him to the poor-house ; he was brought to West Chester, where he was attended by the plaintiff until July 1868.

W. Whitehead, Esq., a justice of the peace, on the 9th of June 1848, on the information of the plaintiff, issued an order declaring Smith a pauper.

The plaintiff did not know that Smith was a pauper. There was no question made by the defendants as to Smith being a pauper, and as to the case being one of emergency.

The principal ground of defence, and that especially urged in the Supreme Court, was that the directors had made certain rules under an Act of Assembly relating to Chester county, which prevented the plaintiff from recovering. The act was passed February 27th 1798 (3 Sm. L. 309.)

"Sect. 8. * * * The said directors respectively are hereby authorized, when they shall deem it proper and convenient so to do, to permit any poor persons to be maintained elsewhere; and if the pauper be married and the person to whom he or she is married is not supported at the county expense, it shall be the duty of the said directors to place the said pauper with the person to whom he or she is married, if required: provided the expense of such maintenance doth not exceed that of the house of employment.

"Sect. 9. The said directors * * * shall have full power to make and ordain all such ordinances, rules and regulations as they shall think proper, convenient and necessary for the direction, government and support of the poor and houses of employment aforesaid, and of the revenues thereunto respectively belonging, and of all such persons as shall come under their care or cognisance, provided the same be not repugnant to this law, or any other of the laws of this state or United States; and provided also, that the same shall not have any force or effect until they shall have been submitted to the president and associate judges of the Court of Common Pleas for the time being, for the district within which the said county of Chester or Lancaster shall be, and shall have received the approbation of said court."

In pursuance of this act the directors established these "rules and regulations in reference to out-door paupers:"

"1. All relief hereafter rendered to paupers, whether for medical attendance or otherwise, must be furnished at the alms-house, unless in cases of extreme emergency, when delays would peril life, or expose the pauper to serious injury were he to be removed, and except also in such cases as in accordance with the Act of Assembly, the directors may deem it proper and convenient to authorize that the pauper be maintained elsewhere.

"2. Except in cases of emergency, as mentioned in the 1st regulation, no payment will be made for medical attendance, or other relief outside of the alms-house, unless the same shall have been permitted by special order of the directors before it is rendered.

"3. No payments will be made by the directors for medical attendance or other relief furnished, unless the person claiming pay shall appear before a justice of the peace and have the poor person duly constituted a pauper, by and with the consent of such person; and the person claiming pay shall also notify said justice of the earliest occasion it is suitable to remove said person to the

14 P. F. SMITH—10

[Directors of the Poor *v.* Malany.]

alms-house, whereupon said justice shall issue his warrant to the constable and have the removal made.

" 4. The person claiming pay as above, must also duly notify one of the directors of the circumstances of the case within three weeks after the first services shall be rendered to the pauper.

"ROBERT L. WALTER, ⎱ Directors."
"S. BUTLER, ⎰

" Now, to wit: June 21st, 1867, the foregoing rules and regulations having been presented according to the provisions of the 9th section of the Act of Assembly of February 27th 1798, relating to the support of the poor in the counties of Chester and Lancaster, the same are approved by the court."

It was admitted by the plaintiff that he had received notice of these rules before his attendance on Smith.

The defendants submitted these points :—

1. The directors of the poor of Chester county had power to make the rules and regulations in evidence in this case, and said rules and regulations having been approved by the judges of the Court of Common Pleas, are binding on the plaintiff.

2. The plaintiff having failed to comply with said rules and regulations, cannot recover for the alleged services to the pauper claimed in this case.

3. The plaintiff cannot in any event recover for more than three weeks' services.

4. The Court of Common Pleas has not jurisdiction in this case.

The court denied the defendants' points, saying amongst other things :—

" But the defendants urge that the rule established by the directors requiring notice (for this is the only one of the series referred to in the points involved in the case), and the plaintiff's failure to comply therewith relieved them from obligation to pay. We are not of this opinion. The obligation is imposed, as we have seen, by the Acts of Assembly and the decisions of the court, and no rule enacted by the directors can therefore remove or affect it.

" But were this otherwise, the rule here relied upon would seem to be inapplicable to a case such as we are trying. The plaintiff had no knowledge of the facts of which the rule requires notice— knew nothing of his patient's circumstances. When called in he saw a stranger suffering almost in the agonies of death, and without a question or a thought in respect to compensation, as he tells us, he rendered his services, learning, for the first time, that his patient was poor and unable to pay after he had ceased to attend. Is the rule applicable to such a case? It reads, ' Any person claiming as above (for services rendered a pauper during emergency), must duly notify one of the directors of the circumstances of the case within three weeks after the first service shall have been rendered to the pauper.' This language certainly implies

[Directors of the Poor v. Malany.]

that the claimant shall have *knowledge* that the individual relieved *is a pauper*, or at least have reason to believe so; and it should not, therefore, be applied to a case like the one before us, where he had not such knowledge, and where there was nothing, so far as appears, to put him on his guard.

"If the rule was intended to require an immediate examination into the pecuniary circumstances of the individual whose necessities, by reason of accident or sudden illness, call for relief, and a report thereon to the directors, on pain of receiving no compensation for relief afforded, and is to receive such a construction, then, we think, it should be held to be unreasonable, and therefore without force. The inquiry in many cases which may be supposed would be entirely unavailing, and in all cases would be indelicate and repulsive. A physician, called to the bedside of a patient maimed and suffering, his life for weeks trembling in the balance (as in the case before us), cannot be required to give his thoughts or his attention to such a service.

"In regard to the 4th point, we will only say that the Common Pleas has so long and so frequently exercised jurisdiction in these cases, and with the apparent approval of the Supreme Court, that we cannot turn the plaintiff out on this ground."

The verdict was for the plaintiff for $127.10.

On the removal of the case to the Supreme Court, the defendants assigned the answers to their points for error.

*W. M. Hayes* and *P. F. Smith* (with whom was *G. F. Smith*), for plaintiffs in error.—On the subject of the jurisdiction of the Court of Common Pleas, they referred to the Acts of March 9th 1771, 1 Sm. Laws 332; February 27th 1798, § 5; 3 Sm. Laws 308; June 13th 1836, Pamph. L. 541, Purd. 795, *et seq.;* Act of April 15th 1867, Pamph. L. 78, Purd. 1472; Versailles *v.* Mifflin, 10 Watts 360; Sugar Loaf *v.* Schuylkill Co., 8 Wright 481; Nippenose *v.* Jersey Shore, 12 Id. 402; Marion *v.* Spring, 14 Id. 308; Act of March 21st 1806, 4 Sm. L. 432, Purd. 41 pl. 5. As to the effect of the rules of the directors, they referred to Directors *v.* Murry, 8 Casey 178, and the Act of 1798, above cited, relating to the poor of Lancaster and Chester counties.

*W. Darlington,* for defendant in error.—As to jurisdiction referred to: North Whitehall *v.* South Whitehall, 3 S. & R. 117; Thornbury *v.* Directors, 12 Id. 110; Roxborough *v.* Bunn, Id. 292; Overseers *v.* McCoy, 2 Penna. R. 432; Directors *v.* Wallace, 8 W. & S. 94; Bradford *v.* Keating, 3 Casey 275; Franklin *v.* Hospital, 6 Id. 522; Directors *v.* Murry, 8 Id. 178; Directors *v.* Worthington, 2 Wright 160; Overseers *v.* The Directors of Schuylkill, 8 Id. 484; Commissioners *v.* Hall, 7 Watts 290; Allegheny County *v.* Watt, 3 Barr 462; Com. *v.* Harman, 4 Id.

[Directors of the Poor *v.* Malany.]

269; County of Northampton *v.* Innes, 2 Casey 156; Lancaster County *v.* Deen, 2 Grant 262.

The opinion of the court was delivered, January 13th 1870, by SHARSWOOD, J.—This was an action of assumpsit commenced in the Court of Common Pleas of Chester county by the plaintiff below, who was a practising physician, against the directors of the poor and of the house of employment of the county of Chester, to recover for medical services rendered by him to a poor person, for which he claimed that the said directors were by law liable.

It is contended that the court had no jurisdiction, and that if the plaintiff had any right, his remedy was by petition to the Court of Quarter Sessions for an order on the directors for the payment of his claim. The question thus raised has never been decided by this court. Laying aside proceedings upon orders of removal which have no application in this case, and where by the 19th section of the Act of June 13th 1836, Pamph. L. 539, any person aggrieved may appeal to the next Court of Quarter Sessions, it is provided by the 23d section that in case any person falls sick or dies in any district before he has gained a settlement so that he cannot be removed, the overseers of such district shall as soon as conveniently may be, give notice to the guardians or overseers of the city or district where such person had last gained a settlement, and if they shall neglect or refuse to pay the moneys expended for the use of such poor person, it is made the duty of the Court of Quarter Sessions of the county where such poor person was last settled, upon complaint to them made to compel payment by such guardians or overseers of all such sums of money as were necessarily expended for that purpose. This provision is evidently confined to the case of the overseers of one district relieving a pauper chargeable to another. In those cases under the poor laws in which a special remedy is provided in the Court of Quarter Sessions, that remedy must be pursued. By the 13th section of the Act of March 21st 1806, 4 Smith 312—a statute of frequent reference in our books—"in all cases where a remedy is provided or duty enjoined, or anything directed to be done by any Act or Acts of Assembly of this Commonwealth, the directions of the said acts shall be strictly pursued and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases further than shall be necessary for carrying such act or acts into effect." Applying the rule established by this legislative precept, it follows that in all controversies between different districts, either in cases of orders of removal or expenses incurred where such order could not be procured in time, the Quarter Sessions have the sole and exclusive jurisdiction. This remits to that tribunal in a summary proceeding the decision of all such questions. "The design of the Act," says Sergeant, J.,

[Directors of the Poor v. Malany.]

" was to give the Quarter Sessions jurisdiction over this class of cases, so as to enable them to act promptly and with as little expense as possible in compelling those districts to maintain paupers on whom the burden was imposed by law :" Versailles v. Mifflin, 10 Watts 360. " The policy of the statute," says Woodward, J., " is to commit pauper cases to the jurisdiction of the Quarter Sessions that speedy relief and justice may be administered:" Sugarloaf v. Schuylkill, 8 Wright 481. " The legislature subsequently," said the same learned judge, when Chief Justice, " having committed the care of paupers to the Quarter Sessions and clothed that court with summary powers, which are equal to all exigencies, common-law remedies would seem to be displaced by necessary construction of the Act of 1806 :" Nippenose v. Jersey Shore, 12 Wright 402; and see Marion Township v. Spring Township, 14 Wright 308. These are all cases between contending districts. I have made as careful and thorough a research as time would allow through all the reported cases in this court, and have found only five in which jurisdiction was assumed in the Common Pleas by a common-law remedy. The first is North Whitehall v. South Whitehall, 3 S. & R. 117, where a township had been divided, and an action was brought by one part against the other to recover its proportion of the expenses of a pauper who had been previously a charge on the old township. No question was made as to jurisdiction, and indeed that case was not properly within any section of the then existing Act of March 9th 1771 : 1 Smith 332. The next is Hopewell v. Independence, 2 Jones 92, in which the controversy also arose out of the division of a township. To this succeeded Bradford v. Keating, 3 Casey 275, and Schuylkill v. Montour, 8 Wright 484, in which it was held that an order for the removal of a pauper, unappealed from, is conclusive against all parties bound by it, and that hence in a civil action brought by overseers of a township for maintenance and expenses of a pauper against the poor directors of a county to which he had been removed by an order of removal, unappealed from, the question whether the Common Pleas had jurisdiction to try a settlement case does not arise. The last case which I have found is Nippenose v. Jersey Shore, 12 Wright 402, before cited, which was an action by one township to recover for the maintenance of a pauper chargeable to the defendants, and would seem to have been within the 23d section of the Act of 1836. The question of jurisdiction, though adverted to in the opinion, was not however raised or passed upon.

But although by the Act of 1836 a special remedy is enacted in the case of one poor district paying the expenses of a pauper for which another is legally liable, and therefore by the canon of construction established by the Act of 1806 such remedy must be pursued to the exclusion of the common law, yet we look in vain

through this or any other act for such a provision where the expenses are incurred by an individual. Actions at common law in such cases have been often sustained, and though *sub silentio*, it must be regarded as very conclusive evidence of the sense of the bench and the bar upon the subject: Roxborough *v.* Bunn, 12 S. & R. 292; Overseers *v.* McCoy, 2 Penrose & Watts 432; Directors *v.* Wallace, 8 W. & S. 94; Franklin *v.* Pennsylvania State Lunatic Hospital, 6 Casey 522; Directors of Westmoreland *v.* Murry, 8 Id. 178; Directors of Chester *v.* Worthington, 2 Wright 160. This disposes of the 3d specification of error as to the jurisdiction of the court.

Upon the question which arises upon the 1st and 2d assignments, as to the liability of the defendants below to the plaintiffs, we concur with the learned judge that The Directors *v.* Worthington, 2 Wright 160, is an authority in point. That was a case from Chester county, though the Act of February 27th 1798, entitled "An act to provide for the erection of houses for the employment and support of the poor in the counties of Chester and Lancaster" (3 Smith 306), does not seem to have been brought to the notice of the court. It was there held that relief may be extended to one entitled to the benefit of the poor laws without an order, in cases of emergency, and the directors are liable to pay for necessary relief furnished by others, provided an order of approval be obtained afterwards. The Act of 1798 requires the removal of paupers to the poor-house, "except in cases where by sickness or other sufficient cause any poor person cannot be removed," and the rules adopted by the directors in pursuance of the act prohibiting outdoor relief, expressly except "cases of extreme emergency, when delays would peril life or expose the pauper to serious injury." The rule which declares that any person claiming pay for medical attendance must notify one of the directors of the circumstances of the case within three weeks after the first services shall be rendered to the pauper, has no application, as the learned judge below properly held, to the case of a party who had no knowledge of the patient's circumstances at the time the services were rendered—that he was a pauper with whom the district was chargeable. It would be an unreasonable interpretation of the rule to require a physician, called suddenly to attend a stranger in suffering and danger, to institute an inquiry into his circumstances and condition in life. No high-minded professional gentleman would ask his patient any question upon such a subject, and in many cases it would be improper to do so. Must the district escape the liability to which it is rightfully subject unless he does? It may be just and wise to require such a notice in the case of a known pauper; but even if the rule were susceptible of the construction contended for by the plaintiffs in error, it may well be questioned whether it would be within the

[Directors of the Poor *v.* Malany.]

power conferred upon them to make "such ordinances, rules and regulations as they shall think proper, convenient and necessary for the direction, government and support of the poor and houses of employment aforesaid, and of the revenues thereunto respectively belonging, and of all such persons as shall come under their care or cognisance; provided the same be not repugnant to this law (of 1798), or any other of the laws of this state or the United States." They cannot by such a rule relieve the district from a legal obligation imposed as we have seen by the act, without any such condition or limitation.

Judgment affirmed.