# L. C. GIBSON v. POOR DIST. OF PLUMCREEK TP.

ERROR TO THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY.

Argued October 8, 1888—Decided October 29, 1888.

1. Except in cases of imperative emergency, the overseers of the poor have no power to bind their districts to the repayment of money borrowed by them, even though it be at once applied to a debt of the district for the payment of which it was borrowed.

2. While in cases of necessity the overseers might contract for supplies or even borrow money, for the relief of the poor, yet without a subsequent order of approval by two justices they may not collect such money or the cost of such supplies from the tax payers of the district: Directors of Poor v. Worthington, 38 Pa. 160; Directors of Poor v. Malany, 64 Pa. 144.

3. A decree of a Court of Quarter Sessions, charging one district in favor of another with the payment of costs and charges, on an order of removal, creates of itself no such pressing necessity as will authorize the overseers to contract a debt in relief of their district.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; GREEN and HAND, JJ., absent.

No. 181 October Term 1888, Sup. Ct.; court below, No. 92 June Term 1887, C. P.

On March 22, 1887, an action of assumpsit was brought by Louis C. Gibson against the Poor District of Plumcreek town-

ship, the declaration averring the right to recover the sum of $440 borrowed by the defendant of the plaintiff on January 28, 1884, and " laid out and expended for the use and advantage of the said defendant in discharge of the defendant's certain debts," etc.   The declaration also contained the common counts.   The defendant pleaded non assumpsit.

At the trial on September 4, 1888, it was shown that prior to January, 1884, a contest arose in the Quarter Sessions of Armstrong county, between the overseers of the poor of Plumcreek township, in Armstrong county, and the overseers of the poor of Rayne township, in Indiana county, with reference to the support and maintenance of certain paupers, which contest resulted in a decree by which the poor district of Plumcreek township was ordered to pay to the poor district of Rayne township the sum of $420 and costs.   To discharge the obligation thus created, the overseers of the poor of Plumcreek township borrowed from the plaintiff the sum of $440, giving him a negotiable note for that amount, dated January 28, 1884, payable one year after date, and signed by " John F. Bell and Jacob Clark, Overseers of the Poor of Plumcreek township."   The money thus obtained was at once applied to the payment of the decree made in favor of Rayne township. Afterwards, as it was made to appear, the overseers of Plumcreek township obtained an order of removal of the same paupers to Washington township, in Indiana county.   This order of removal was sustained by the court on proceedings attacking it, and Washington township was decreed liable and paid to the overseers of Plumcreek township the sum of $420.   In addition to the foregoing, the overseers of Plumcreek township, probably before the money had been received from Washington township, directed a tax to be levied to meet this same expense, which tax was collected and something like $700 came into the hands of the overseers of the poor of Plumcreek township.

The court, NEALE, P. J., after reviewing the evidence of the foregoing facts, charged the jury :

Overseers of the poor have only such powers as are granted to them under the statute, and so it is with school directors and supervisors of roads.   The duties of those different town-

Charge of Court below.

ship officers are circumscribed and limited by statute. They have no right under any circumstances to exceed the powers conferred upon them by the law. They are not authorized under the general law to negotiate loans. They are authorized to take care of the poor and to see that tax rates are levied sufficient for the purpose of defraying the expenses connected with their duties as overseers of the poor for their respective townships, but they have no right under the law to go beyond that duty. The duties of overseers of the poor, school directors and supervisors of roads, are limited, because as has well been said by the counsel arguing this case on behalf of the defendant, if in one case an overseer of the poor could contract an honest debt and borrow money and give an obligation that would bind the township, he could also contract a dishonest debt and give an obligation that would bind the township to the same extent and with the same force, and no tax payer could know the amount of taxes he might be called upon to pay or how far his property lying within that township would become liable for the debts thus contracted by officers exceeding their powers. If an overseer of the poor can contract such debts in such a manner, by giving the obligation of the township, then school directors would have a right in the same way to do so, and supervisors of the roads in the same way, and all would be at sea as to what the actual responsibilities of the township might be, or what the individual responsibilities of the citizens of the respective townships might be. The law, therefore, is exacting, that these officers shall be limited in the exercise of their powers, and shall go no further than it authorizes them.

And so we say to you, gentlemen of the jury, that strong as we think the claim of the plaintiff in this case to be, yet under the law as we understand it and as we have to interpret it, we are sometimes confined in our duty, and cannot permit a claim of this kind to be collected off the township upon a proceeding such as this. It is true, that this suit is not brought directly upon the note, but the note is offered in evidence, and not only the note in evidence but the testimony of the witnesses all corroborate the fact, that this was nothing else than a loan. Gibson loaned the money to the overseers for the term of one year with interest from date of its execution, and the wit-

nesses concur in saying that the money was borrowed from Gibson, and Gibson himself says that the money was loaned to the overseers. We cannot separate the evidence to show that it was anything else than a distinct loan, and if it was a loan, we are bound to say that the law does not authorize the borrowing of money for that purpose, nor the giving of obligations on the part of the overseers of the poor for money they have borrowed.

\*    \*    \*    \*    \*    \*    \*    \*

On the part of the plaintiff we are asked to charge as follows:

1. If the jury find from the evidence that the defendant obtained from the plaintiff on January 28, 1884, the sum of four hundred and forty dollars, and that the same was applied to the discharge of the indebtedness of the defendant prior to that date incurred, the defendant is bound to repay it to the plaintiff, together with interest, not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial, and the verdict of the jury must be for the plaintiff.

Answer: That point is refused.[1]

2. If the jury find that the township of Plumcreek was indebted to the township of Rayne, by a decree of the Quarter Sessions of said county, in the sum of four hundred and forty dollars, including costs; that the defendant requested the plaintiff to pay the same, and that they would subsequently repay or refund the amount so as aforesaid by him expended; that in pursuance of said request the plaintiff did pay the aforesaid amount in discharge of the said defendant's indebtedness, if they so find, they are instructed that such a transaction is not a borrowing of money, but a contract simply for the payment of a debt which the defendant was already bound to pay, and their verdict ought to be for the plaintiff.

Answer: Refused. If the facts set forth in this point are true, it would seem that the right, if any, of the plaintiff, would result from the fact of acquiring the rights of Rayne township, and if so, then the remedy would seem to be by enforcing, under proper substitution, the decree already entered in favor of Rayne township, which would be in a different forum.[2]

Charge of Court below.

3. If the jury believe that the defendant township received the benefit of the money ($440) paid by the plaintiff for the use of the township and has retained and enjoyed the use of the same, then in the absence of any contract, the plaintiff has an undoubted remedy against the township for money had and received, paid out and expended for the use of the said defendant and at her request, and the jury should find in favor of the plaintiff.

Answer: That point is refused under the facts in this case.[3]

4. If the jury believe it has been the habit and custom in the defendant township, to meet any deficits existing in the township treasury, and to discharge any unexpected indebtedness by the borrowing of money for the use of the township by the overseers of the poor, that this fact appeared in the auditor's settlements and was known by the citizens throughout the township and acquiesced in by them; that in pursuance of said habit, custom and acquiescence and upon the strength and credit thereof, the money in controversy was procured from the plaintiff and expended for the benefit and use of the municipality in the discharge of a prior fixed indebtedness ; that said money was enjoyed and still is enjoyed by them the incorporators, the conclusion is irresistible that said corporators ought to pay back the money, and the verdict of the jury should be for the plaintiff.

Answer: That point is refused under the facts in this case.[4]

5. That under all the evidence the verdict of the jury should be for the plaintiff.

Answer: That point is refused.[5]

The defendant requests us to charge as follows:

1. That overseers of the poor have no right to borrow money for the use of a township so as to render said township liable, and the obligation in this case showing that it is for borrowed money, the plaintiff cannot recover.

Answer: That point is affirmed.[6]

3. The overseers of the poor of a township have no right to incur a debt or increase the same except by a vote duly recorded upon the minutes, and after complying with the other requisites of §§ 1 and 2 of the act of April 20, 1874, P. L. 65, and having failed to comply with such requisites the obligation is void and the plaintiff cannot recover.

Answer: We affirm that point rather as following the first point than for anything it contains in itself.

5. The power to borrow money does not belong to a quasi municipal corporation such as a township ; such power must be conferred by legislature, and there being no such power conferred upon the overseers of the poor of Plumcreek township by legislature, and the undisputed testimony being that the plaintiff seeks to recover money loaned to the overseers of the poor of said township, he cannot recover.

Answer: That point is affirmed.[7]

9. Under all the evidence in this case the verdict of the jury should be for the defendant.

Answer: That point is affirmed, and we direct the jury as a matter of law that their verdict must be entered in favor of the defendant.[8]

The jury returned a verdict for the defendant, and judgment being entered thereon, the plaintiff took this writ, assigning as error:

1–5. The answers to plaintiff's points.[1 to 5]

6–8. The answers to defendant's points.[6 to 8]

*Mr. M. F. Leason* (with him *Mr. J. H. McCain*), for the plaintiff in error:

In 1 Dillon Mun. Corp., § 384, the doctrine for which we contend is to be found clearly stated in a quotation from an opinion by Mr. Justice FIELD, viz.: "The doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake, or without authority of law, it is her duty to refund it; not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it; or, if used by her, to render an equivalent to the true owner, from the like general obligation; the law, which always intends justice, implies a promise. In reference to money or other property, it is not difficult to determine in any particular case, whether a liability

with respect to the same has attached to the city.    The money must have gone into her treasury, or been appropriated by her, and when it is property other than money, it must have been used by her, or be under her control."    The same doctrine is found in 1 Dillon Mun. Corp., § 84, referring to Gelpcke v. Dubuque, 1 Wall. 221; so, in Allegheny City v. McClurkan, 14 Pa. 83; McLain v. Snyder Tp. Sch. D., 12 Pa. 204; Heidelberg Sch. D. v. Horst, 62 Pa. 302.    Why not render to Caesar the things that are Caesar's?

*Mr. W. D. Patton*, for the defendant in error:

This suit is brought upon the theory that the defendant received the money of the plaintiff, and is therefore bound to render him a just compensation, but the theory and illustration are both destroyed by Union Tp. v. Gibboney, 94 Pa. 534, and Penn. Canal Co. v. Shirley Tp., 18 W. N. 397.    There is a difference between the power to contract a debt for the prosecution of a legitimate corporate purpose and a power to borrow money for that purpose.    He who possesses the power to borrow on the credit of another, has a much more extensive and therefore a more easily abused trust reposed in him: Curtis v. Leavitt, 15 N. Y. 9.    A married woman is responsible for the improvement of her separate real estate, but not for the money borrowed to improve it: Sellers v. Heinbaugh, 117 Pa. 218. The dilemma cannot be avoided by attempting to show a ratification: Mercer Co. v. Pittsb. & E. R. Co., 27 Pa. 409.    In Cherry Tp. Overseers v. Marion Tp. Overseers, 96 Pa. 528, and in Sugar Creek Overseers v. Washington Overseers, 62 Pa. 479, it is expressly decided that overseers of the poor have no power to bind their township by agreements contrary to law, and that such officers cannot change the rights of the public by such agreements.

Why has not the plaintiff a remedy against J. F. Bell and Jacob Clark?

OPINION, MR. CHIEF JUSTICE GORDON:

The plaintiff, Lewis C. Gibson, instituted an action of assumpsit against the poor district of Plumcreek, for the purpose of recovering from that district the sum of some $440, loaned by him, on January 28, 1884, to its overseers.    The facts of the case as they appear from the evidence, are as follows:

On June 4, 1877, an appeal was taken from an order of removal of a pauper to the said district from the Rayne Township poor district, in the county of Indiana. This appeal was finally determined by the Quarter Sessions of Armstrong, against the Plumcreek district, and on taxation of the costs and charges due Rayne they were found to amount to $420.86, which sum the court ordered the defendant to pay, and for this purpose the money, as above stated, was borrowed from the plaintiff. The counsel for the defendant insists that this borrowing was not the result of the joint action of the overseers, but the act of one only. This fact, however, if fact it be, we pass as of no moment in the final disposition of this contention, for the material question, and the one on which the court below put its decision, was that which involves the power of the overseers to bind their district for borrowed money.

The powers of these officers are very strictly limited by the various acts of assembly relating to the maintenance of the poor, and, except in rare and special cases, they cannot step beyond the letter of those acts. We agree, however, with the counsel for the plaintiff, that occasionally circumstances may arise when, in order to give effect to the statutes, we must go beyond their letter. But such is allowable in special emergencies only, as where medical aid or other assistance is imperatively required before a relief order can be obtained, examples of which may be found in Directors of the Poor v. Worthington, 38 Pa. 160, and Directors of the Poor v. Malany, 64 Pa. 144. But even then the rule of the law is only partially relaxed, for without a subsequent order no action can be sustained against the poor district. We will not undertake to say that in cases of necessity the overseers might not contract for supplies, or even borrow money, but without the approval of two justices they would not be allowed to collect such money or the cost of such supplies from the tax payers of the district.

How then, stands the plaintiff? His case is not backed by an order of relief, nor did he aid the defendant when laboring under an imperative emergency. He must depend alone on the order of the court; but this order created no such pressing necessity as required the overseers to contract a debt

Statement of Facts.

in relief of their district. It constrained them to proceed only within the strict lines of the statute, that is, to levy a tax in order to pay the debt, and the Quarter Sessions would doubtless have imposed upon them no undue urgency or haste. From what we have said it follows, that the action of the overseers in borrowing the money in controversy from the plaintiff was without warrant of law and cannot bind the district. Whilst the case is a hard one for the plaintiff who honestly advanced his money for, as he supposed, the relief of the township, yet it would be out of all character to allow the officers of a minor municipality, like the defendant, without the authority of the court, people, justices, or auditors, to saddle the citizens of their several districts with debts which ought not to have been contracted, or which, when contracted, should be provided for in the manner prescribed by the statute.

The judgment is affirmed.